1    JOSEPH P. RUSSONIELLO (CSBN 44332)
     United States Attorney
2
     BRIAN STRETCH (CSBN 163973)
3    Chief, Criminal Division

4    DENISE MARIE BARTON (MABN 634052)
     Assistant United States Attorney
5
     NATHANAEL M. COUSINS (CABN 177944)
6    Assistant United States Attorney

7        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102
8        Telephone: (415) 436-7359
         Facsimile: (415) 436-7234
9        denise.barton@usdoj.gov

10   Attorneys for Plaintiff

11
                        UNITED STATES DISTRICT COURT
12
                     NORTHERN DISTRICT OF CALIFORNIA
13
                          SAN FRANCISCO DIVISION
14

15
                                          )   CR No.  08-0329 JSW
16   UNITED STATES OF AMERICA,            )
                                          )   MEMORANDUM IN OPPOSITION TO
17          Plaintiff,                    )   MOTION TO SUPPRESS EVIDENCE IN
                                          )   VIOLATION OF THE FOURTH
18      v.                                )   AMENDMENT
                                          )
19   TIMOTHY CRAIG,                       )   Hearing Date:  September 25, 2008
                                          )                  2:30 pm
20          Defendant.                    )
                                          )
21   _____     )

22

23

24

25

26

27

28

MEMORANDUM IN OPPOSITION TO MOTION TO SUPPRESS EVIDENCE IN VIOLATION OF THE
FOURTH AMENDMENT, 08-0329 JSW                                              1

Napa County Sheriff's Department Detective Joseph Jones prepared and submitted an application for a Search Warrant and supporting Statement of Probable Cause to search the home of the defendant. This Search Warrant was issued by a neutral and detached state court judge. The search warrant was based, in part, on information regarding a federal investigation into the trading of child pornography images and movie files by over 100 email users. The search of the defendant's home was a valid and proper search under the good faith exception to the exclusionary rule; the affidavit did not contain any misstatements that would defeat a finding of good faith or support a *Franks* violation; and the information on which the search warrant was based was not stale. For all these reasons, the defendant's Motion to Suppress should be denied.

## I.    FACTUAL BACKGROUND

A.    <u>Immigration and Customs Enforcement Lead Information on "Timothy Craig" at 3271 Beard Road, Napa, California  and Investigation by Detective Jones</u>

In July 2007, Napa County Sheriff's Department Detective Joseph Jones received lead information from Immigration and Customs Enforcement (ICE) agents concerning a child pornography investigation in Ohio that had identified an individual identified as Timothy Craig at 3271 Beard Road, Napa, California as a suspect. *Declaration of Detective Joseph Jones (Jones Decl.)*, ¶¶ 5-6. It was this lead information that led Detective Jones to submit and obtain a search warrant to search the residence of the defendant Timothy Craig.

Detective Jones is an experienced law enforcement officer who has specialized training in computer crimes, including the investigation of crimes involving the manufacturing, possession, transportation, and distribution of child pornography and has participated in hundreds of child pornography investigations. *Jones Decl.,* ¶¶ 1-2. Before submitting the search warrant application to Judge (Ret.) John N. Anton, Detective Jones engaged in further investigation, learning that the defendant Timothy Craig was a registered sex offender under California Penal Code Section 290. He further learned that the defendant had a conviction for attempted child molestation in Los Angeles County and also was arrested in a 2002 prosecution in San Mateo County that involved the luring of a 13-year old girl, in actuality an undercover police officer

1   from Daly City Police Department. *Jones Decl.*, ¶ 8.  In addition, before submitting the search

2   warrant application, Detective Jones reviewed the image that was identified in the ICE lead

3   information as child pornography, Image #223.  *Jones Decl.*, ¶ 9.  Based on his training and

4   experience, Detective Jones agreed with the ICE agents that Image #223 was child pornography.

5   *Jones Decl.*, ¶ 9.  In his analysis, he noted that the photo showed a lewd and lascivious exhibition

6   of the genitals and pubic and rectal areas of two female children, for the purpose of sexual

7   stimulation of the viewer.  In his analysis, he considered the setting, focal point of the image, the

8   clothing, what the girls' positioning suggests, and what the image was intended to do for the

9   viewer.

10          B.      Detective Jones Submits a Search Warrant Application for Residence of Timothy

11                  Craig

12          Detective Jones submitted the Search Warrant and Statement of Probable Cause to Judge

13   (Ret.) John N. Anton, sitting in the Napa County Superior Court of California on August 7, 2007.

14   *Jones Decl.*, ¶ 10.  Detective Jones recalls that he submitted the Napa County Search Warrant

15   and Statement of Probable Cause along with an ICE Report of Investigation and the federal

16   warrant with attachments, which have all been submitted as <u>Exhibit B</u> to the defendant's *Motion*

17   *to Suppress*.  *Jones Decl.*, ¶ 12.  Detective Jones specifically recalls taking the materials in

18   support of the search warrant to the Judge clipped in a fat binder clip.  *Jones Decl.*, ¶ 12.  Having

19   reviewed all the materials submitted in support of the defendant's Motion to Suppress, Detective

20   Jones recognizes that on Page 4 of the Statement of Probable Cause, in the boxes for "Items

21   attached and incorporated by Reference," there are marks in both the YES and NO boxes and that

22   the NO box appears to be filled in by handwriting.  *Jones Decl.*, ¶ 12.   Detective Jones does not

23   remember who made the marks in the YES and NO boxes, or when they were made.  *Jones*

24   *Decl.*, ¶ 12.

25          Detective Jones does recall that he sat with Judge Anton for 20-30 minutes in his

26   chambers while he reviewed the Search Warrant, Statement of Probable Cause, and Attachments.

27   He recalls that Judge Anton had a few questions, but does not remember the specific questions.

28   *Jones Decl.*, ¶ 13.  After Judge Anton reviewed the submitted materials, Detective Jones saw him

1   sign the Search Warrant. *Jones Decl.*, ¶ 14. On August 8, 2007, the day after Judge Anton

2   signed the Search Warrant, Detective Jones executed the search authorized by the Search

3   Warrant.

4       C.    The Content of the Search Warrant and Statement of Probable Cause Authored By

5             Detective Jones

6           In the Statement of Probable Cause for the Search Warrant, after setting forth his

7   experience generally and in the field of child pornography investigations, see Exhibit B to

8   *Defendant's Motion to Suppress*, p. D000005-06, Detective Jones set forth the following key

9   facts in the Statement:

10  •       In November 2005, ICE agents received information concerning a child pornography

11          investigation in Royalton, Ohio concerning an individual named Lee Sly and his receipt

12          of child pornography. Exhibit B to *Defendant's Motion to Suppress*, p. D000006:6-10.

13  •       In January 2007, ICE agents learned from a Illinois Police Department that another

14          individual was involved in trading child pornography over the internet and had received

15          an image of child pornography from the AOL screen name SIRIOUT3, which was

16          identified as the account of Lee Sly (the person who had been identified in the Ohio

17          investigation). Exhibit B to *Defendant's Motion to Suppress*, p. D000006:12-14.

18  •       On March 1, 2007, ICE agents served AOL with a search warrant for Lee Sly's email

19          account. This AOL search warrant revealed "125 other individuals engaged in trading

20          child pornography (Reference attachment)." Exhibit B to *Defendant's Motion to*

21          *Suppress*, p. D000006:16-18.

22  •       All of the leads developed in connection with this AOL search warrant contained at least

23          one image or movie file of child pornography that had been received, forwarded, and/or

24          traded by each target in January and February 2007. Exhibit B to *Defendant's Motion to*

25          *Suppress*, p. D000006:18-19.

26  •       The results of the AOL search warrant indicated that the defendant Timothy Craig was a

27          suspect in the ICE investigation of Lee Sly's email account. The records further revealed

28          that an email with the address "Limosdude" was in Lee Sly's sent folder as Message

#223.  Timothy Craig was identified at 3271 Beard Road, Napa, California address. Exhibit B to *Defendant's Motion to Suppress*, p. D000006:20-24.

- From the information received in the investigation, an ICE agent summonsed records from PG&E for the address associated with Timothy Craig - 3271 Beard Road, Napa, California –  and confirmed that Craig was listed as the account holder.  Exhibit B to *Defendant's Motion to Suppress*, p. D000006:26-28.

- Detective Jones further confirmed that Craig was a California Penal Code section 290, registered sex offender.  Exhibit B to *Defendant's Motion to Suppress*, p. D000006:30-32.

- In listing items to search, Detective Jones characterizes the image in Message #223, as "child pornography."  Exhibit B to *Defendant's Motion to Suppress*, p. D000007:12.

- In his training and experience, Detective Jones stated that "individuals engaged in the possession, and distribution of child pornography will store those files in various locations, and on various forms of digital media including computer hard drives, and external storage locations.  These individuals will often obtain, trade, and distribute these pornographic images via an internet connection, provided bv an Internet Service Provider."  Exhibit B to *Defendant's Motion to Suppress*, p. D000008:27-31.

D.     The Content of the Federal Investigation Materials

Putting aside the issue of whether the federal investigation materials were or were not attached to the Search Warrant Application submitted by Detective Jones, the materials in questions contained the following pertinent material when provided to Detective Jones:

- An ICE Report of Investigation (ROI) dated May 18, 2007 identified the 125 leads identified from the search warrant on Lee Sly's AOL email account.  The Report detailed that each of the leads contained at least one image or movie file of child pornography received, forwarded, and/or traded by each target in January and February 2007.  Exhibit B to *Defendant's Motion to Suppress*, p. D000012.

- The defendant Timothy Craig was identified in connection with leads for the San Francisco area.   Exhibit B to *Defendant's Motion to Suppress*, p. D0000121.

1   ●     Subscriber information received from AOL associated with the email "limosdude" listed

2        an address of 3271 Beard Road, Napa, CA.    Exhibit B to *Defendant's Motion to*

3        *Suppress*, p. D000044.

4   **II.   ARGUMENT**

5        To rule on the defendant's *Motion to Suppress* and reach the correct result in this case,

6   this Court does not need to address the litany of issues raised by the defendant. It is entirely

7   appropriate to proceed directly to the question of whether Detective Jones acted in good faith in

8   execution of the warrant, without "having to belabor the issue of whether the affidavit stated

9   probable cause." *United States v. Crews*, 502 U.S. 1130, 1136 (9th Cir. 2007) (citing *United*

10  *States v. Leon*, 468 U.S. 897, 925 (1984)) (find the good faith rule applicable and declining to

11  address the sufficiency of the warrant); *United States v. Huggins*, 299 F.3d 1039, 1046-47 (9th

12  Cir. 2002)(foregoing a determination of the sufficiency of probable cause and upholding the

13  search under the good faith exception). The United States raises the claim of "good faith" at the

14  outset, to frame this issue in the context that will remove all factual disputes concerning what

15  was and was not attached in the submission to Judge Anton. This argument is not a specious

16  argument, as the defendant insinuates in his *Motion to Suppress*, but rather reliance on well-

17  established and directly applicable Supreme Court and Ninth Circuit jurisprudence.

18       Defendant went to great lengths to present evidence to this Court that Judge Anton does

19  not believe that the search warrant affidavit submitted by Detective Jones contained the

20  attachments from the federal investigation. While not conceding that these materials were not

21  attached,[1] for sake of this *Memorandum in Opposition*, the United States assumes that the

---

23      [1] Although not necessary for a determination on the defendant's Motion, the United States
24  suggests that certain factors indicate that Judge Anton could have been mistaken in his belief. In
    the 8 page Search Warrant application and Statement of Probable Cause submitted by Detective
25  Jones - which even the defendant concedes was submitted for review by Judge Anton - the
    Statement read "This AOL search warrant revealed "125 other individuals engaged in trading
26  child pornography *(Reference attachment)*."   Exhibit B to *Defendant's Motion to Suppress*, p.
    D000006:16-18 (emphasis added). This reference to an "attachment" within the Statement of
27  Probable Cause supports the position that the federal materials were attached. In addition,
    Detective Jones recalls that Judge Anton reviewed the materials for approximately 20-30 minutes
28  and that the materials he submitted to Judge Anton were contained in a "fat binder clip." *Jones*

1   materials, although intended to be attached, were not.  Even making this assumption, the correct

2   result, after reviewing the uncontested materials and considering all applicable case law, is for

3   this Court to deny the *Motion to Suppress* in its entirety.

4        A.      The Search Warrant Should Be Upheld Under the Good Faith Exception

5        The Fourth Amendment exclusionary rule does not "bar the use in the prosecution's case

6   in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued

7   by a detached and neutral magistrate but ultimately found to be unsupported by probable cause."

8   *United States v. Leon*, 468 U.S. 897, 900 (1984).  When a judge finds probable cause, even if the

9   warrant is lacking in probable cause, a police officer should be able to rely on the judge's finding

10  even if the judge is wrong unless the warrant so clearly lacks probable cause that it is obvious to

11  the officer.  *Id.* at 921, 926.  The logic underlying the good-faith exception in *Leon* is that

12  penalizing an officer for a judge's error does not deter future Fourth Amendment violations.  *Id.*

13  at 921 ("Penalizing the officer for the magistrate's error, rather than his own, cannot logically

14  contribute to the deterrence of Fourth Amendment violations").  The inquiry in determining the

15  applicability of the good faith doctrine is not whether there was, in actuality, probable cause, but

16  instead "whether the affidavit was sufficient to create disagreement among thoughtful and

17  competent judges."  *United States v. Fowlie*, 24 F.3d 1059, 1067 (9th Cir. 1994)(quotations and

18  citations omitted).

19       Here, the defendant seeks to use the Declaration by Judge Anton that he obtained and

20  submitted to this Court as both a sword and a shield.  The defendant contends that Judge Anton

21  only relied upon the Search Warrant, Affidavit, and Statement of Probable Cause submitted by

22  the Detective Jones. Exhibit D to *Motion to Suppress*, *Anton Decl.*, ¶¶ 7, 10.  What the defendant

23  conveniently glosses over is that Judge Anton, apparently based solely on the Search Warrant,

24  Affidavit, and Statement of Probable Cause, and not any of the federal investigation materials,

25  ─────────────────

26  *Decl.*, ¶ 12.  It is questionable, if not doubtful, that Judge Anton, an experienced state court

27  judge, would have needed 20-30 minutes to review an 8 page Search Warrant application and
    Statement of Probable Cause or that Detective Jones would have used a "fat binder clip" to hold

28  these 8 pages.  However, none of these facts need to be resolve for this Court to deny the Motion
    to Suppress.

1   found the search warrant to be supported by probable cause and issued the search warrant. What
2   is significant is that in the mind of this "thoughtful and competent judge," who was proffered by
3   the defendant, the affidavit presented sufficient probable cause for a warrant to issue. *See*
4   *Fowlie*, 24 F.3d at 1067. That the Search Warrant, Affidavit, and Statement of Probable Cause
5   submitted by the Detective Jones may not now, after a detached and removed review, be regarded
6   as containing probable cause does not negate the availability of the good faith exception.
7        Defendant cites many cases in support of his contention that the *Leon* good faith
8   exception is not applicable in the instant case. However, in most of those cases, the Ninth
9   Circuit held that regardless of the purported deficiencies in the search warrant affidavits, or
10  *notwithstanding the deficiencies*, the *Leon* good faith exception rendered the search valid. *Crews*,
11  502 F.3d at 1136-37 (the affidavit provided a "reasonable nexus between the crime [felon in
12  possession of a firearm] and [location to be searched] by demonstrating a sufficient link
13  between" the co-defendants, the firearm evidence, and the location to be searched); *United States*
14  *v. Rowland*, 145 F.3d 1194, 1207 (9th Cir. 1998) (notwithstanding insufficient probable cause,
15  upholding a search warrant for child pornography under the good faith exception because "the
16  affidavit as a whole was not a bare bones affidavit, containing only conclusory statements and
17  completely devoid of factual support); *Fowlie*, 24 F.3d at 1067-68 ("although the affidavit
18  consisted of largely conclusory opinion [connecting the drug activity to the search location], we
19  believe it sufficient, if just barely, to meet the minimal requirements of the good faith
20  exception"); *United States v. Luk*, 859 F.2d 667, 676 (9th Cir. 1988) (the good faith exception
21  applies and suppression is not appropriate where "the executing agents [and affiant] clearly
22  attempted in substance and in procedure to obtain and execute a warrant they believed was
23  valid").
24        Of the cases cited by the defendant, in only three of those cases did the court dismiss the
25  government's assertion of good faith. Each of those cases were extremely fact-specific and not
26  applicable here. First, in *United States v. Luong*, the Court held that the search warrant, which
27  relied solely on an unverified and uncorroborated tip of methamphetamine production, utterly
28  lacked any colorable information connecting the suspect to the criminal activity. 470 F.3d 898,

903 (9th Cir. 2002).   Next, in *United States v. Kow*, the search warrant was determined to be overbroad insofar as it sought "essentially all the documents on the premises" in connection with a corporate tax investigation.  58 F.3d 423, 428 (9th Cir. 1995).  The Court held that given the significant overbreadth, no reasonable agent could have relied on it in good faith.  *Id.*  Finally, in *United States v. Hove*, the police officer sought a warrant for a location without specifying any connection between the location to be searched and the person associated with the alleged criminality (bomb threats) or the evidence to be searched for.  848 F.2d 137, 138-39 (9th Cir. 1988).  The officer intended to include information linking the suspect to the location to be searched but that information was not contained in the final draft.  *Id.*  The Court held that the reasonableness of the "good faith reliance" must be determined objectively and that the search warrant, as drafted, failed to show any facts justifying a conclusion that the evidence would be found at that location.  *Id.* at 139-140.  None of these cases bear on the circumstances of these case and lend support to the defendant's argument.

    The good faith exception is not without limitations and would not apply in circumstances in which

    (1) the affiant mislead the issuing judge by making a false statements or recklessly disregarding the truth;

    (2) the issuing judge abandoned his role and acted as a "rubber stamp" to the application;

    (3) the warrant was facially deficient in detail concerning the place to be searched or things to be searched for; or

    (4) the affidavit is no lacking in "indicia of probable cause" that a reasonable officer could not rely upon it.

*Leon*, 468 U.S. at 923-926; *Crews*, 502 F.3d at 1136; *Fowlie*, 24 F.3d at 1067.  Here, the defendant claims that the good faith exception does not apply for two of these reasons.  He contends that Detective Jones misled the issuing judge with false statements, and that the affidavit was so lacking in probable cause that is could not reasonably be relied upon.  As set forth below, neither has merit.

//

1.     *The Statement of Probable Cause By Detective Jones Does Not Contain The False Statements Alleged By the Defendant*

In support of his *Franks* argument, the defendant contends that the materials submitted by Detective Jones contained material misstatements of fact or omissions that affected Judge Anton's determination in issuing the search warrant.  The analysis for assessing whether Detective Jones made a false statement such that would preclude application of the good faith exception or independently engaged in a *Franks* violation, as claimed by the defendant, is the same.  Rather than reciting nearly the same argument in two separate section of this Memorandum, the United Sates hereby incorporates Section II.B herein in support of its argument that the false statements alleged by the defendant are not false and would not preclude application of the good faith exception.

2.     *Even if Lacking in Probable Cause, the Affidavit Nonetheless Set Forth a Reasonable Basis To Believe That Child Pornography Would Be Found at the Defendant's Home*

Putting aside whether the Search Warrant, Affidavit, and Statement of Probable Cause contained sufficient probable cause for a warrant to issue, the defendant cannot seriously contend that the affidavit is so lacking in "indicia of probable cause" that a reasonable officer could not rely upon it.  *See Leon*, 468 U.S. at 923-926; *Crews*, 502 F.3d at 1136; *Fowlie*, 24 F.3d at 1067.

The facts presented in the materials that were submitted, according to defendant, in the Search Warrant, Affidavit, and Statement of Probable Cause showed that the defendant, Timothy Craig, was identified in connection with a large scale child pornography trading investigation. Exhibit B to *Defendant's Motion to Suppress*, p. D000006:6-10, D000006:12-14.  Specifically, in March 2007, ICE agents served AOL with a search warrant in connection with this investigation and identified "125 other individuals engaged in trading child pornography (Reference attachment)."  Exhibit B to *Defendant's Motion to Suppress*, p. D000006:16-18.  As set forth in Detective Jones' Statement of Probable Cause, all of the leads developed in connection with this AOL search warrant contained at least one image or movie file of child pornography that had been received, forwarded, and/or traded by each target in January and February 2007.  Exhibit B

1  to *Defendant's Motion to Suppress*, p. D000006:18-19.  Following execution of this AOL search

2  warrant in the investigation, the investigation revealed that the defendant Timothy Craig was a

3  suspect in the ICE investigation of Lee Sly's email account, the email that had been associated

4  with trading child pornography amongst 125 persons.  The records further revealed that an email

5  with the address "Limosdude" was in Lee Sly's sent folder as Message #223.  Timothy Craig was

6  identified at 3271 Beard Road, Napa, California address.  Exhibit B to *Defendant's Motion to*

7  *Suppress*, p. D000006:20-24.  After this information was ascertained, an ICE agent summonsed

8  records from PG&E for the address associated with Timothy Craig - 3271 Beard Road, Napa,

9  California – and confirmed that Craig was listed as the account holder.  Exhibit B to *Defendant's*

10  *Motion to Suppress*, p. D000006:26-28.  Detective Jones further confirmed that Craig was a

11  California Penal Code section 290, registered sex offender.  Exhibit B to *Defendant's Motion to*

12  *Suppress*, p. D000006:30-32.  In his Search Warrant, Affidavit, and Statement of Probable

13  Cause, in listing items to search, Detective Jones characterizes the image in Message #223, as

14  "child pornography."  Exhibit B to *Defendant's Motion to Suppress*, p. D000007:12.  And, to

15  link the contraband materials to the defendant's address, Detective Jones stated that "individuals

16  engaged in the possession, and distribution of child pornography will store those files in various

17  locations, and on various forms of digital media including computer hard drives, and external

18  storage locations.  These individuals will often obtain, trade, and distribute these pornographic

19  images via an internet connection, provided bv an Internet Service Provider."  Exhibit B to

20  *Defendant's Motion to Suppress*, p. D000008:27-31.  Finally, that the defendant is a registered

21  sex offender in California should heighten suspicion that child pornography would be present.  In

22  his affidavit, Jones states that he discovered that Craig is a PC 290 registered sex offender with

23  the California Department of Justice.  The California legislature is clear about registered sex

24  offenders:

> Sex offenders pose a potentially high risk of committing further sex offenses after
> release from incarceration or commitment, and the protection of the public from
> reoffending by those offenders is a paramount public interest.

27  California Penal Code section 290(a)(1).  The fact that the Statement fails to identify the type of

28  crime that led to the registration requirement does not negate the concern articulated in section

290, namely that "sex offenders pose a potentially high risk of committing further sex offenses," receipt and possession of child pornography being among the offenses categorized as sex offenses.

The level of detail attested to by Detective Jones meets or exceeds the "indicia of probable cause" that has previously been held sufficient to uphold application of the good faith exception.  Considering all of this information in its totality, the Statement of Probable cause sets forth, at a minimum, "indicia of probable cause" to support application of the good faith exception.  This approach has been upheld previously by the Ninth Circuit in the context of a child pornography search warrant.  In *United States v. Rowland*, the defendant claimed that the affidavit failed to establish a link between his home and the child pornography or suspected criminal activity involving child pornography.  145 F.3d at 1203.  In the *Rowland* affidavit, a postal inspector attested that Rowland had ordered child pornography tapes; had requested that the tapes be sent to his post office box; and that he had been observed collecting mail at the post office box.  *Id.* at 1204.  The affidavit contained no reference, beyond a cursory statement that Rowland was expected to go to his work and then home after receipt of the child pornography, linking the child pornography to Rowland home.  *Id.*  Notwithstanding this limited information, the Court held that although there was insufficient probable cause to search the home, there was sufficient indicia of probable cause to uphold the search under the good faith exception.  *Id.* at 1207-08.  *See also Fowlie*, 24 F.3d at 1067-68 ("although the affidavit consisted of largely conclusory opinion [connecting the drug activity to the search location], we believe it sufficient, if just barely, to meet the minimal requirements of the good faith exception")

This same analysis has been followed and used to uphold searches based on the good faith exception to the search warrant in courts throughout the country in similar circumstances.  *United States v. Gautherum*, Cr. No. 5:07-0105, 2007 WL 4788472 (S.D. W.Va. December 27, 2007) (upholding search warrant of convicted sex offender based of limited descriptions of images under good faith exception); *United States v. Cordy*, No. 8:06CR321, 2007 WL 675111 (D. Neb. March 5, 2007) (even if search warrant for child pornography lacked probable cause, it was sufficient under the good faith exception);  *United States v. Laufer*, 245 F. Supp. 2d 503, 511

1   (W.D.N.Y. 2003) (upholding search warrant without any allegations that defendant possessed

2   child pornography but subscribed to chid pornography websites under good faith exception)

3   *United States v. Hernandez*, 183 F. Supp. 2d 468, 479 (D.P.R. 2002) (defendant indicted for

4   possession of child pornography moved to suppress ; court held that even if probable cause was

5   lacking, the officers acted with a good faith reasonable belief that the warrant was not defective).

6         a.   *Description as "Child Pornography" Does Not Defeat Good Faith*

7         Given the number of pages devoted to his argument that Detective Jones failed to

8   sufficiently describe the images of child pornography, the defendant will no doubt argue in his

9   Reply that the failure to describe the image sufficiently will defeat application of the good faith

10  exception.  In his devoted reliance on *United States v. Battershell*, 457 U.S. 1048 (9th Cir. 2006),

11  the defendant misconstrues the law regarding what is the requisite level of description of an

12  image of child pornography in a search warrant and disregards that an image can be described in

13  conclusory terms and still be sufficient for a finding of probable cause.  *United States v. Moyer*,

14  256 Fed. Appx. 61, 63 (9th Cir. 2007) ("magistrate judge may rely on the accompanying

15  conclusory statement by an affiant officer experienced in the investigation of child pornography

16  crimes that the two websites at issue exclusively contain child pornography)(unpublished);

17  *United States v. Smith*, 795 F.2d 841, 848 (9th Cir. 1986) (conclusory statement only that the

18  images in question depicted "sexually explicit conduct" of minors without a more detailed

19  description of the image was not fatal to search warrant for child pornography)  *United States v.*

20  *Grant*, 490 F.3d 627, 633-34 (8th Cir. 2007), cert denied, 128 S. Ct. 1704 (2008) (upholding the

21  sufficiency of a search warrant based on a statement by a computer repair technician to the affiant

22  that the image he saw was child pornography without any further description of the image;

23  alternatively, holding that the description would be sufficient under the good faith exception);

24  *United States v. Diyn*, Crim. No. 3:2006-37, 2008 WL 295942, *7-8 (W.D. Pa. July 18, 2008)

25  (characterizing the images as "child pornography" with all other inferences was sufficient for

26  probable cause determination)..  *See also United States v. Pena*, 266 Fed. Appx. 574 (9th Cir.

27  2008) (upholding search warrant and giving deference to experience of officers in making

28  assumptions as to age of minors depicted).  Insofar as a limited description of a child

1    pornography image has been held to be sufficient for determining probable cause, it would most

2    certainly meet the lower standard under the good faith exception of demonstrating "indicia" of

3    probable cause.

4         b.    *Description of a Single Image Does Not Defeat Good Faith*

5         The defendant also contends that the fact that only one image was described renders the

6    search warrant defective on its face.  What the defendant disregards is that possession of one

7    image of child pornography is as criminal as possession of ten images.  An affiant has no

8    obligation to describe numerous images to reach a finding of probable cause or indicia of

9    probable cause.  The fact of the stated images, taken with all the other facts presented by

10   Detective Jones in his Search Warrant, Affidavit, and Statement of Probable Cause set forth

11   sufficient indicia, if not probable cause, that child pornography would be found at the defendant's

12   home.

13   B.   Detective Jones Did Not Make Any False Statements, or *Franks* Violations, In His

14        Statement of Probable Cause

15        The defendant has not made the requisite threshold showing that is necessary before a

16   hearing may be held on the sufficiency of the warrant obtained by Detective Jones.   The

17   Supreme Court's decision in *Franks v. Delaware* established a two-prong test for challenging the

18   sufficiency of a warrant affidavit. 438 U.S. at 155-56.  The Supreme Court decision in *Franks v.*

19   *Delaware* established a two-prong test for challenging the sufficiency of a warrant affidavit. 438

20   U.S. at 155-56.  The Ninth Circuit has broken these prongs out into five requirements that must

21   be satisfied before a *Franks* hearing is warranted:

22
23        (1) the defendant must allege specifically which
          portions of the warrant affidavit are claimed to be false;

24        (2) the defendant must contend that the false statements
25        or omissions were deliberately or recklessly made;

26        (3) a detailed offer of proof, including affidavits, must
          accompany the allegations;

27        (4) the veracity of only the affiant must be challenged;

28        (5) the challenged statements must be necessary to find probable cause.

*United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986) (citing *United States v. Dicesare*, 765 F.2d 890, 895 (9th Cir. 1985).)  The *Franks* test applies to intentional omissions as well as false statements.  *See United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985).

The defendant bears the burden of proof and must make a "substantial showing" to be entitled to a hearing.  *See United States v. Jawara*, 474 F.3d 565, 582 (9th Cir. 2007); *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002).  The Supreme Court was careful to limit its decision in *Franks* so that hearings would not become "commonplace" because they are not "obtainable on a bare allegation of bad faith."  *United States v. Chesher*, 678 F.2d 1353, 1360 (9th Cir. 1982).  Merely negligent false statements or omissions do not rise to the level of a *Franks* violation.  *See, e.g, United States v. Potter*, 830 F.2d 1049, 1052 (9th Cir. 1987).  Instead, "[t]here is . . . a presumption of validity with respect to the affidavit supporting the . . . warrant." *Franks*, 438 U.S. at 171; *see also United States v. Burnes*, 816 F.2d 1354, 1357 (9th Cir. 1987) ("'In doubtful cases, preference should be given to the validity of the warrant.'") (quoting *United States v. McQuisten*, 795 F.2d 858, 861 (9th Cir. 1986)).  Unsupported accusations are not sufficient.  The defendant's attack on the warrant "must be accompanied by an offer of proof" that includes "[a]ffidavits or sworn or otherwise reliable statements of witnesses."  *Franks*, 438 U.S. at 171.  *Franks* hearings are not permissible "for purposes of discovery or obstruction" but must be reserved for instances where there are serious and documented concerns regarding the affiant's intentional, and not merely negligent, truthfulness.  *Id*. at 170.

Here, the defendant has failed to show that the statements he contends were false were "recklessly or deliberately" by Detective Jones in support of the search warrant.  Moreover, contrary to the defendant's contention, neither of the identified statements is false.

1.     *The Image Attached to Message #223 Was Child Pornography*

The defendant contends that Detective Jones made a material misstatement in describing the image as "child pornography."  The defendant claims that the image in question "was not child pornography at all, but instead child erotica protected by the First Amendment." *Defendant's Motion to Suppress* (ECF Docket No. 28), p.39.  In making this statement, the defendant has not only disregarded well-established law but utterly ignores the nature of the

1   photograph.  The image in question depicts the lewd and lascivious exhibition of the genitals and

2   pubic and rectal areas of two minor female children.  The two female children are partially

3   clothed age-inappropriate lingerie, including g-strings, that although marginally covering the

4   pubic area of the children, reveal the vaginal areas of both children.  The children are posed in a

5   sexually suggestive position with their buttocks facing the camera and turning their heads to look

6   at the camera.  The focus of the image is on the buttocks and vaginal area of both children.  The

7   only conceivable purpose of pose of the children and of this image is for the sexual stimulation of

8   the viewer.  The United States will submit this image - which defense counsel has reviewed and

9   which continues to be available to him - under seal and the Court will have an independent

10  opportunity to assess whether Detective Jones made the material misrepresentation alleged by the

11  defendant.

12          The defendant is charged with Receipt and Possession of Child Pornography in violation

13  of Title 18, United States Code, section 2252(a)(1) and (a)(4), which prohibit the receipt or

14  possession of visual depictions of "sexually explicit conduct."  "Sexually explicit conduct"

15  includes "lascivious exhibition of the genitals or pubic area of any person.  18 U.S.C. §

16  2256(2)(A)(v).  The defendant contends that the fact that the image "displays no breasts of

17  genitalia" renders it child erotica and not child pornography.  Presumably, the defendant takes

18  issue with the fact that the genital area of the children depicted in the image is at least partially

19  covered by clothing.

20          The question issue raised by the defendant is whether there can be a lewd and lascivious

21  exhibition of the genital or pubic area of any person where the genitals are covered by an article

22  of clothing.  This statutory question must be placed in the context of the Supreme Court' s

23  decision in *New York v. Ferber,* 458 U.S. 747 (1982), which upheld, against a First Amendment

24  challenge, a New York statute criminalizing the distribution of child pornography.  In *Ferber*, the

25  Court held that the New York statute served the purpose of "prevention of the sexual exploitation

26  and abuse of children," which was "a government objective of surpassing importance." *Id.* at

27  757.  Because of the "particular and more compelling interest in prosecuting those who promote

28  the sexual exploitation of children," the Court held that all child pornography – even that which

1   is not obscene under the standard set forth in *Miller v. California,* 413 U.S. 15 (1973) – was

2   outside of the scope of the First Amendment and therefore, could be banned.  *Ferber*, 458 U.S. at

3   761.  The Supreme Court held that laws banning child pornography withstand First Amendment

4   scrutiny as long as the conduct prohibited is "adequately defined by . . . applicable law."  *Id.* At

5   764-65.  The Court held that the statutory phrase, "lewd exhibition of the genitals," was a

6   statutory definition of child pornography that did not offend the First Amendment.  *Id.* at 765,

7   773-74.  The statutory language upheld in *Ferber*, parallels that statutory language in 18 U.S.C.

8   section 2256, defining "sexually explicit conduct" as encompassing "lascivious exhibition[s]."[2]

9   The federal statutory language further explains that its prohibitions extend beyond the genitals to

10  include the "pubic area."

11       Lascivious is defined as "[t]ending to excite lust; lewd; indecent; obscene; sexual

12  impurity; tending to deprave the morals in respect to sexual relationships; licentious." Black's

13  Law Dictionary 882 (6th Ed. 1990).  The Third Circuit concluded that the term "lascivious

14  exhibition" "means a depiction which displays or brings forth to view in order to attract notice to

15  the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the

16  viewer." *Knox*,  32 F.2d 733, 745 (3rd Cir. 1992).  This definition does not include any

17  requirement of nudity.

18       The Tenth Circuit has held that, lasciviousness is not a characteristic of the child

19  photographed, but of the exhibition which the photographer has arranged the photograph to suit

20  his "peculiar lust."  *See Knox*, 32 F.3d at 747; *United States v. Wiegand*, 812 F.2d 1239, 1244-45

21  (9th Cir. 1987).  Accordingly, lasciviousness remains an inquiry for the finder-of-fact, that does

22  not involve an inquiry concerning the intent of the subject.  This interpretation is consistent with

23  the plain language of the statute and furthers Congress' intent in eradicating the pervasive harm

24  children experience when subject to posing for pornographic purposes.  *Knox*, 32 F.3d at 747.

25

26  _____

27       [2] The circuits have .uniformly treated the terms "lewd" and lascivoius" as material
    equivalents. *See e.g,,United States v. Frabizio*, WL 2351263 (1st Cir. 2006) (internal citations

28  omitted)**.**

1    Several Circuits, including the Tenth Circuit have adopted, what has come to be referred

2    to as the *"Dost* test" when interpreting the term "lascivious exhibition." *See United States v.*

3    *Dost*, 636 F.Supp. 828 (S.D. Cal. 1986); *United States v. Wolfe,* 890 F.2d 241, 245 (1989);

4    *United States v. Grimes*, 244 F.3d 375 (5th Cir. 2001); *United States v. Carroll*; 190 F.3d 290,

5    297 (5th Cir. 1999); *United States v. Knox,* 32 F.2d 733, 746 fn. 10 (3rd Cir. 1992); *United States*

6    *v. Rubio*, 834 F.2d 442, 447-448 (5th Cir. 1987); *United States v. Nolan*, 818 F.2d 1015, 1019 n.5

7    (1st Cir. 1987).  The *Dost* factors suggest, that when a finder-of-fact determines whether an image

8    is a "lascivious exhibition," six factors should be considered:

9        1) whether the focal point of the visual depiction is on the child's genitalis or pubic area;

10       2) whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose
         generally associated with sexual activity;

11

12       3) whether the child is depicted in an unnatural pose, or in inappropriate attire,
         considering the age of the child;

13       4) whether the child is fully or partially clothed or nude;

14       5) whether the visual depiction suggests sexual coyness or a willingness to engage in
         sexual activity;

15

16       6) whether the visual depiction is intended or designed to elicit a sexual response in the
         view.

17

*Grimes*, 244 F.3d at 380 (internal citations omitted).

18

19       Notably, the *Dost* factors, used by courts for the last twenty years to help define

20    "lascivious exhibition," specifically include in its considerations, "whether the child is fully or

21    partially clothed or nude." Since its inception, the *Dost* factors have demonstrated that the level

22    of clothing is but one of several factors for the finder-of-fact to review when it considers whether

23    an image is child pornography.  As the Third Circuit noted in *United States v. Villard* – decided

24    five years prior to its decision in *Knox*:

25        [A] photograph of a naked girl might not be lascivious . . . but a photograph of a girl in a
         highly sexual pose, dressed in hose, garters, and a bra would certainly be found to be

26       lascivious.

27    *Villard,* 885 F.2d 117, 124 (3th Cir. 1989).  .

28

1    In 1994, in *Knox*, the Third Circuit held that the plain language and legislative history of

2   sections 2252, and 2256, demonstrated that Congress did intend to reach to the non-nude

3   lascivious exhibitions of the genitals and pubic area. Subsequently, the Eighth Circuit in *United*

4   *States v. Horn*, 187 F.3d 781, 780 (8th Cir. 1999), upheld a conviction of the defendant based on

5   image the jury found lascivious.  The court specifically held:

6           In particular, we believe that when the child is nude or partially clothed, when the focus
            of the depiction is the child's genitals or pubic area, and when the image is intended to
7           elicit a sexual response in the viewer, the depiction is lascivious."

8   *Id.*  Other Circuits have followed suit and held that lascivious exhibition" does not require full or

9   partial nudity. *United States v. Boudreau*, 250 F.3d 279, 282-83 (5th Cir. 2001); (citing *United*

10  *States v. Carroll*, 190 F.3d 290, 298 (5th Cir. 1999); *vacated in part, reinstated in relevant part*

11  *by*, 227 F.3d 486, 488 *5th Cir. 2000) (per curiam).

12          In an unpublished decision, *United States v. Campbell,* 81 Fed. Appx. 532 (6th Cir. 2003),

13  the Sixth Circuit upheld the jury's conviction of a defendant for violations of child pornography

14  statutes involving non-nude images of preadolescent girls. The court concluded that the images

15  met the *Dost* standards and included a lascivious exhibition of the genitals:

16

17          Those [images] are not completely nude [the girls] are found wearing lingerie or
            stockings and garters-inappropriate attire for girls of their age. Many of the depictions are
            sexually suggestive, with girls posing unnaturally, prompting focus on the genital area.
18          Moreover, most of the images seem intended to elicit a sexual response in the viewer.
            That intent is evidenced by how the child poses (on her back with legs slightly spread), at
19          the angle of the shot (taken from near the child's feet, while she is lying on her back), and
            the child's facing expression (smiling while looking into the camera).  These same
20          characteristics support a finding that the images suggest a sexual coyness or willingness
            to engage in sexual activity. In short, Campbell's images involved all of the *Dost* factors
21          to some extent, and a rationale juror could have found beyond a reasonable doubt that
            they depicted sexually explicit conduct.
22

23  81 Fed. Appx. At 536-37.

24          More recently, in *Grimes* the Fifth Circuit concluded, as a matter of law, that nude

25  photographs of young girls, with the images of their genitalia pixilated out of the photo, was a

26  "lascivious exhibition" within the meaning of section 2256. The court rejected Grimes' challenge

27  to the sufficiency of the evidence and noted, "that the producing of these visual depictions

28  involved the use of minors engaging in sexually explicit conduct and that the visual depiction

captured that activity." 244 F.3d at 380.  In sum, the plain language of the statute contains no requirement that the images of child pornography must include nudity to be prohibited. Additionally, courts and commentators that have reviewed this statutory language over the last twelve years have consistently concluded that "lascivious exhibition" does not require that the child be nude.

The image in question falls squarely within the statutory definition of "lewd and lascivious" exhibition and therefore Detective Jones description as "child pornography" cannot be regarded as a false statement.

2.    *The Statement That Craig Was a Suspect Was Not False*

The defendant also claims that Detective Jones lied in stating that the

AOL search warrant indicated that Timothy Craig was a suspect in this investigation.  The records indicated the following:
"Limosdude" - Tim Craig, 3271 Beard Road, Napa, CA, 94558, (707) 257-1282.


*Defendant's Motion to Suppress* (ECF Document No. 28), p. 36.  Then, after identifying this purported "lie," defendant engages in convoluted extrapolations as to how and why this statement was a lie, alleging that the statement connotes a relationship between Lee Sly, the email sender, and the defendant.  The defendant's analysis is, at best, a tortured effort to create a lie where none exists.  Detective Jones laid out the results of the AOL search warrant.  To the extent this information was not presented as clearly as it could have been, a less than clear statement about an investigation does not render it a lie, and certainly not the material misstatement that the defendant must show to prevail on a *Franks* hearing.

.    In any event, even if the defendant successfully identified a "lie" in the Statement of Probable cause on either ground, he has failed to allege that the false statements were "deliberately or recklessly made."  *See Perdomo*, 800 F.2d at 920 (9th Cir. 1986).  Allegations of falsity alone are not sufficient to make out a *Franks* violation.  For these reasons, the defendant's Franks argument fails.

//

//

C.    An Eight Month Lapse Does Not Render a Search Warrant Stale

The federal search warrant from the information on which Detective Jones' Statement of Probable Cause was based was an investigation that spanned from January 2007 through March 2007.  Exhibit B to *Defendant's Motion to Suppress*, p. D000006:12-14; D000006:16-18.  Detective Jones sought and obtained the search warrant for the defendant's home on August 7, 2007.  *Jones Decl.*, ¶ 10.  The defendant incorrectly argues that this five to possibly, eight month, lapse renders the warrant stale.

"The test for judging the timeliness of a search warrant is whether there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises."  *United States v. Gann*, 732 F.2d 714, 722 (9th Cir. 1984).  Staleness is a fact-specific inquiry on a case by case basis.  Information in support of a warrant is not considered to be stale if "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises."  *United States v. Lacey*, 119 F.3d 742, 745-46 (9th Cir. 1997) (considering staleness in the context of a computer search warrant for child pornography).

In the specific context of child pornography investigations, the Ninth Circuit has consistently held that search warrants based on information that predated the warrant by as much as one year was not stale. "If a line must be drawn in child pornography cases, I find that the line is one year absent evidence of ongoing or continuous criminal activity."  *United States v. Greathouse*, 297 F. Supp. 2d 1264 (9th Cir. 2003) (suppressing search warrant based on limited information that was thirteen months old).  Furthermore, in *United States v. Lacy*, the affiant testified as to events that predated the warrant by 10 months.  He also stated that collectors maintain images due to high value and store in secure place, typically their homes.  The Court noted that it was unwilling to assume that materials are kept indefinitely but that given the nature of the crime, there was sufficient evidence to believe that the evidence would still be at the house upon execution of the search warrant.  119 F.3d at 745-46; *see also United States v. Roby*, 27 Fed. Appx. 779, 780 (9th Cir. 2001)(gap of eight months between the of the download of child pornography detailed in the warrant and execution of the warrant did not render the warrant stale;

holding that "the mere lapse of substantial amounts of time is not controlling in a question of staleness); *United States v. Hay,* 231 F.3d 630 (9th Cir. 2000)(relying on Lacey, the court held that a search warrant based on six month old information was not stale). *N.b. United States v. Chase*, CR 206-CR-0065-PMP-PAL, 2006 WL 2347726 (D. Or. August 9, 2006) (upholding a search warrant based on information that was between one and three years old; the affiant attested to continuing sexual offenses against children beginning in 1996; that the defendant had given a third party child pornography disks in 2001 and 2002; that the defendant was known to associate with young boys in 2004, after being registered as a sex offender). These cases do not, as defendant contends, require "expert testimony" to either validate the affidavit or "cure" any staleness issues. For these reasons, the defendant's staleness challenge fails.

**III.    CONCLUSION**

For the foregoing reasons, the Defendant's Motion to Suppress should be denied in all respects.

JOSEPH P. RUSSONIELLO
United States Attorney

DATED: August 26, 2008                 ____/s/_____
                                        DENISE MARIE BARTON
                                        NATHANAEL M. COUSINS
                                        Assistant United States Attorneys